IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PREVALENCE HEALTH, LLC | ) | CASE NO. 09-02016-ee |
| | ) | Chapter 11 |
| Debtor | ) | |
| | ) | |

**MOTION TO AMEND ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR AN ORDER (A) ESTABLISHING SALES PROCEDURES IN CONNECTION WITH SOLICITATION OF OFFERS FOR SALE OF CERTAIN ASSETS; (B) APPROVING STALKING HORSE BID PROTECTION; AND (C) SETTING NOTICE OF OBJECTION DEADLINES AND DATES OF HEARINGS**
[Dkt. # 099]

Prevalence Health, LLC, the Debtor and debtor-in-possession herein (the "Debtor" or the "Company") files this *Motion to Amend* (the "Motion") *the Order (A) Establishing Sales Procedures in Connection with Solicitation of Offers for Sale of Certain Assets; (B) Approving Stalking Horse Bid Protection; and (C) Setting Notice of Objection Deadlines and Dates of Hearing* (the "Sales Procedures Order") [Dkt. # 99], and in support thereof, presents the following to the Court:

1. On June 9, 2009 (the "Petition Date"), the Debtor filed its Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor is continuing to operate its business and manage its properties and assets as debtor-in-possession.

2. An official committee of unsecured creditors (the "Committee") was appointed by the United States Trustee in this case on July 16, 2009 (Dkt. #082).

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

4. On or about August 13, 2009, the Court entered the Sales Procedures Order governing the sales procedures for the sale of the Assets[1] set forth therein (the "Sales Procedures").

5. Under the Sales Procedures, Pharmacy Consulting Associates ("PCA") was responsible for marketing the Debtor's Assets and notifying prospective purchasers of the deadline to submit Qualified Offers (as defined herein) to purchase the Assets. The Debtor and PCA will present to the Court for approval one or more offers for all or a part of the Assets.

6. PCA has advised the Debtor that the deadlines and timetables of the Sales Procedures need to be revised and extended to be able to ensure that all prospective purchasers have an opportunity to submit Qualified Offers for the Assets.

7. Accordingly, the Debtor requests the Court to amend the Sales Procedures Order to provide for the following sales procedures and timetable for the sales process pursuant to an anticipated motion to sell substantially all of the assets of the Debtor outside the ordinary course of business, free and clear of liens, claims, interests and encumbrances, with such liens, claims, interests and encumbrances attaching to the proceeds of sale in the same order and priority and to the same extent as they attached to the property sold (the "Sale Motion") by which the Debtor will seek authority to sell the Assets free and clear of any liens, claims, and encumbrances to one or more buyers.

---

[1] Unless otherwise indicated, all capitalized terms shall have the meaning given in the Sales Procedures Order.

8. The Debtor seeks approval of the following Sales Procedures:

A. <u>Qualified Bidders</u>.

(1) <u>Qualified Bidders</u>. The Debtor, by and through PCA will seek to identify and recognize a number of bidders as qualified to bid on the Assets, based on, among other things, statements of interest and certain financial information demonstrating to the Debtor's satisfaction the bidders' financial ability to consummate a purchase of the Assets (each, a "Qualified Bidder"). PCA shall notify each Qualified Bidder in writing of its designation as a Qualified Bidder and its ability to participate in the sales process. Any other party interested in purchasing some or all of the Assets may seek to become a Qualified Bidder and participate in the bidding process by notifying PCA (at the address set forth in Section (A)(5) below) prior to the Bid Deadline (as such term is defined below) of its interest in bidding on some or all of the Assets and providing such information as may be required by PCA and the Debtor to demonstrate such potential bidder's financial ability to consummate a purchase of the applicable Assets. PCA, in its discretion after consultation with the Debtor may determine which additional parties considered to be a Qualified Bidder. Each additional Qualified Bidder will be notified in writing of its designation as a Qualified Bidder.

(2) <u>Due Diligence</u>. The Debtor will afford any Qualified Bidder such due diligence access or additional information as may be reasonably requested by the Qualified Bidder and that the Debtor and PCA determine, in their business judgment, to be reasonable and appropriate. The Debtor will coordinate all reasonable requests for additional information and due diligence access from any Qualified Bidder through PCA. Unless otherwise determined by the PCA in its discretion after consultation with the Debtor, the availability of additional due diligence to a Qualified Bidder will cease from and after the Bid Deadline.

(3) <u>Letter of Intent</u>. Once a Qualified Bidder determines the Assets on which it will submit a bid, the Qualified Bidder may prepare and submit to PCA an executed Letter of Intent ("<u>LOI</u>") describing such Assets sought to be purchased and the purchase price for those assets.

(4) <u>Non-Qualified Bidders</u>. Any potential bidder that is not designated as a Qualified Bidder in accordance with the foregoing shall be disqualified from further participation in the bidding process (a "<u>Non-Qualified Bidder</u>"). A Non-Qualified Bidder will not be permitted to conduct due diligence, make a bid for any of the Assets under these Sale Procedures or participate as a bidder at the Sales Hearing.

(5) <u>Bid Deadline</u>. Not later than 1:00 p.m., Central Time, on Friday, August 28, 2009 (or the date of any last extension granted by the Debtor in its

discretion, the "Bid Deadline"), a Qualified Bidder that desires to make a bid shall deliver a written copy of its bid as described below in Section B(2) to Guy W. Stillwell, President, Pharmacy Consulting Associates, 2647 Cottage Grove Place, Woodbury, MN 55129. PCA will distribute a copy of each bid received to the Debtor, counsel for the Debtor and to the Committee.

B.   Bid Requirements.

(1)   Assets. A Qualified Bidder may make a bid for the Assets or some portion thereof. PCA reserves the right, in its discretion after consultation with the Debtor to consider a Qualified Bid for combinations of the Assets, but are not required to do so.

(2)   Form and Content of Bid. A bid is a signed Asset Purchase Agreement ("APA") from a Qualified Bidder in substantially the same form as attached hereto as Exhibit "A" or otherwise acceptable to the Debtor stating that:

(a)   The Qualified Bidder offers to purchase the specified Assets for cash. The APA must clearly delineate all components of the proposed purchase price and the price offered for each component of the Assets.

(b)   The Qualified Bidder's offer is irrevocable; and

(c)   The Qualified Bidder's offer is subject to approval by the Bankruptcy Court, but is not subject to any further due diligence, corporate or board approval, or a financing contingency and does not contain any other material condition precedent to closing.

(3)   Required Supporting Materials. A Qualified Bidder shall accompany its bid with (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory financing commitment if selected as the Successful Bidder and such other evidence of ability to consummate the transaction as PCA may reasonably request; and (b) a copy of a resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed.

(4)   Required Good Faith Deposit. By the Bid Deadline, a Qualified Bidder must deposit with PCA a good faith deposit (the "Good Faith Deposit") in the amount of the lesser of five percent (5%) of the amount of its bid or $50,000.00. The Good Faith Deposit must be made by certified check or wire transfer and will be held by PCA subject to paragraph F herein.

(5)   Qualified Bid. A bid received by the Bid Deadline from a Qualified Bidder that meets the requirements in this Section is considered a "Qualified Bid."

The Debtor reserves the right to waive noncompliance with any one or more of these requirements and deem any otherwise non-qualifying bid to be a Qualified Bid. A Qualified Bid will be evaluated based upon factors such as: (a) the amount of the Qualified Bid; (b) the fair net value to be provided to the Debtor under the Qualified Bid; (c) the ability of the Qualified Bidder to close the proposed sale transaction without delay; and (d) any other factors that the Debtor and PCA may deem relevant.

(6) <u>Rejection of Bid</u>. Notwithstanding the foregoing, PCA shall be entitled to reject any bid, in its discretion after consultation with the Debtor if the bid:

    (a)    is on terms that are materially more burdensome or conditional than the terms of this Order;

    (b)    requires any indemnification of such Qualified Bidder in its APA;

    (c)    is not received by the Bid Deadline;

    (d)    includes a non-cash instrument or similar consideration;

    (e)    that does not satisfy Section B; or

    (f)    contains any material conditions to closing.

Any bid rejected pursuant to this Section B(6) shall be deemed not to be a Qualified Bid.

(7) <u>Reserve Amount</u>. There is no minimum bid amount for the Assets, however, all parties reserve the right to object to the approval of the sale of the Assets.

(8) <u>Bid Negotiations</u>. Upon the receipt of Qualified Bids, PCA may negotiate with one or more Qualified Bidders regarding the terms of the applicable Qualified Bids.

(9) <u>Selection of Successful Bidder</u>. PCA, in consultation with the Debtor and the Committee, shall identify the highest and best bid(s) for the Assets to submit to the Court for approval.

C.    <u>Sale Motion</u>.

The Debtor will prepare and file a Sale Motion on or before August 28, 2009 in which it seeks authority to sell the Assets to the Successful Bidder(s). The Sale Motion will seek the entry of a final order from the Bankruptcy Court approving and

authorizing the proposed sale to the Successful Bidder(s) on terms and conditions substantially consistent with and in accordance with the Sale Procedures and the APA.

D.  Objections.

Any objection to the Sale Motion must be filed with the Clerk of the Bankruptcy Court and served on Debtor's counsel on or before 5:00 p.m. (central time) on September 11, 2009.

E.  Sale Hearing.

(1)  Preliminary Hearing. A preliminary hearing with respect to the Sale Motion will be held at 2:30 p.m. (central time) on Tuesday, September 15, 2009 at the United States Bankruptcy Court, Southern District of Mississippi, United States Bankruptcy Courthouse, Room 106, 100 East Capitol Street, Jackson, MS 39201.

(2)  Final Hearing. A final hearing on the Sale Motion will be held on Wednesday, September 16, 2009 at 3:00 p.m. at the United States Bankruptcy Court, Southern District of Mississippi, United States Bankruptcy Courthouse, Room 106, 100 East Capitol Street, Jackson, MS 39201.

F.  Return of Good Faith Deposit.

(1)  The Good Faith Deposit, together with all interest accrued thereon, if any, shall be returned to any bidder whose bid was not the Successful Bid.

(2)  The Good Faith Deposit submitted by the Successful Bidder, together with all interest thereon, if any, shall be applied against the payment of the purchase price, as defined in the relevant asset purchase agreement, at the closing of the sale to the Successful Bidder.

G.  Break-up Fee for Stalking Horse Bidder.

(1)  The Debtor and PCA may seek, but are not required, to secure a "stalking horse" bidder (the "Stalking Horse Bidder"). To secure a Stalking Horse Bidder, the Debtor and PCA request that a break-up fee of one-and-a-half percent (1.5%), inclusive of expenses ("Break-up Fee") be approved.

(2)  The Break-up Fee shall be paid to the Stalking Horse Bidder concurrently with the consummation and closing of a sale to a party other than the Stalking Horse Bidder that is approved by the Court.

H. <u>Closing</u>.

(1) The Closing of the sale(s) of the Assets will occur on or before September 30, 2009, unless extended by mutual agreement of the parties. Whether a Qualified Bidder can close earlier than September 30, 2009 will be a factor in determining the highest and best bid.

(2) The Closing shall be held in the offices of Debtor's counsel, Butler, Snow, O'Mara, Stevens & Cannada, PLLC, 17th Floor, Regions Plaza, 210 East Capitol Street, Jackson, Mississippi, or at such other location as the parties may agree.

I. <u>Proceeds of Sale</u>.

The Debtor shall place the net proceeds of the sale of the Assets in a separate interest-bearing trust account to be established by the Debtor-in-Possession, which moneys shall be disbursed only upon further Order of this Court, after notice and a hearing to creditors and parties in interest.

J. <u>Modification of Timetable.</u>

The Debtor, in consultation with PCA and the Committee, may modify the timetable set forth herein if doing so is in the best interests of the bankruptcy estate and in order to maximize the value realized for the Assets being sold herein.

9. These Amended Sale Procedures should be approved since the requested procedures: (i) are the product of the Debtor's sound business judgment; (ii) will foster and enhance bidding and thus maximize the offers for the Assets; and (iii) are in the best interest of the Debtor's estate and its creditors. The Committee supports the relief sought in this Motion.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the entry of an Order Amending the Sales Procedures Order to (A) Establish Sales Procedures in Connection with Solicitation of Offers for Sale of Certain Assets; (B) Approve Stalking Horse Bid Protection; and (C) Set Notice of Objection Deadlines and Dates of Hearings, all as set forth herein. The Debtor prays for other such general and specific relief as this Court may deem just.

THIS, the 28th day of August, 2009.

Respectfully submitted,

PREVALENCE HEALTH, LLC

By: /s Stephen W. Rosenblatt
      STEPHEN W. ROSENBLATT (MB # 5676)
      PAUL M. ELLIS (MB # 102259)

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
17th Floor, Regions Plaza
210 East Capitol Street
Jackson, MS 39201
Post Office Box 22567
Jackson, MS 39225-2567
Telephone: (601) 948-5711
Fax: (601) 985-4500
steve.rosenblatt@butlersnow.com
paul.ellis@butlersnow.com

## CERTIFICATE OF SERVICE

I certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically and was separately served by United States Mail, postage prepaid, or by e-mail on the following:

Ronald H. McAlpin, Esq.
Trial Attorney, Office of the United States Trustee
A. H. McCoy Federal Building, Suite 706
100 W. Capitol Street
Jackson, MS 39269
Ronald.McAlpin@USDOJ.gov

Mr. Phillip Theodore
A&I Solutions, LLC
256 Seaboard Lane
Franklin, TN 37067
ptheodore@aandisolutions.com

Morton R. Branzburg, Esq.
AmerisourceBergen Drug Company
260 S. Broad Street
Philadelphia, PA 19102
mbranzburg@klehr.com

Mr. Brian T. O'Neill
DDP Medical Diamond Diabetic Products
11800 28th Street
Saint Petersburg, FL 33716
brain@ddpmedical.com

Mr. Alan H. Walters
First Commercial Bank
1300 Meadowbrook Rd.
Jackson, MS 39211
awalters@firstcommercialbk.com

Mr. James G. Lang
Hamilton Partners, Inc.
300 Park Boulevard, Suite 500
Itasca, IL 60143
jl@hpre.com

SO CERTIFIED, this the 28th day of August, 2009.

/s/ Stephen W. Rosenblatt

Jackson 4307814v1